**YORK v. ALLEY et al.**
No. 2371.

Court of Civil Appeals of Texas. El Paso.
Jan. 23, 1930.

Rehearing Denied Feb. 20, 1930.

Penix & Penix, of Wichita Falls, for appellant.

David Proctor, H. S. Garrett, and James & Conner, all of Fort Worth, Vinson, Elkins, Sweeton & Weems, and Joel H. Berry, all of Houston, Harris, Harris & Sedberry, of San Angelo, Paul Moss, of Odessa, Robert Lee Bobbitt, Atty. Gen., and R. D. Cox, Asst. Atty. Gen., for appellees.

HIGGINS, J.

This is an action under the second subdivision of article 5323, R. S., instituted by appellant, York, against appellee 'Alley, county surveyor of Ector county, to compel a survey of four tracts of land alleged to be unsurveyed land belonging to the public free school fund. The land described in the petition is situate in Ector and Crane counties, and in appellant's brief is briefly described as follows:

"First Tract: Lying between University Block 35 on the East and Block B–16 and Block B–22 on the West and Section 6, Block 44, Township 3 S. on the North and University Block 35 on the South.

"Second Tract: Lying between section 17. Block 44, Township 3 S. on the North and University Block 35 on the South.

"Third Tract: Lying between Section 26, Block 44, Township 3 S. on the North and University Block 35 on the South.

"Fourth Tract: Lying between section 32, Block 44, Township 3 S. on the North and University Block 35 on the South."

The petition described the surrounding tracts of land by section and block numbers, and named the owners thereof. It was averred that University block 35 was owned by and in the possession of the Board of Regents of the University of Texas, whose members were named and their residences given.

The surveyor answered and impleaded the various owners and persons in possession of the lands adjacent to the alleged vacancies, except the state of Texas; the Board of Regents being among those so impleaded, as well as various oil companies.

The members of the Board of Regents filed a plea in abatement, setting up that the title to block 35 is in the state of Texas, and that the state was a necessary party to the suit. Like pleas were filed by various oil companies. Upon hearing of these pleas, evidence was heard in support thereof, the pleas sustained, and the suit dismissed.

The petition upon its face discloses that each of the four tracts are bounded upon at least one side by University block 35. The evidence adduced discloses that, according to the records and maps of the general land office, no vacancy appears, and that all of tracts Nos. 2, 3, and 4, and a large part, if not all, of tract No. 1, is a part of said University block, and claimed by the commissioner of the general land office and Board of Regents so to be. It was on account of the fact so shown by the records and maps of the general land office that the commissioner rejected the application of appellant made under the first subdivision of article 5323, R. S.

In order to determine whether the alleged vacancy exists, it is of course necessary to locate the true boundary lines of the surrounding lands, and it appears from the evidence that the boundary issue in the case is as to the location of the west line of the University block and the south lines of certain sections therein. The suit, if successfully maintained, would change said west and south lines of the University block from the position which they are now recognized and claimed to be by the commissioner of the general land office and Board of Regents, and move such lines to the east and south. If these lines be so located, then the land described in the petition is unsurveyed and dedicated to the public free school fund.

But in either event it belongs to the state of Texas whose title is not that of a mere trustee. The state owns the land just as fully as before it was dedicated to public educational purposes. Theisen v. Robison, 117 Tex. 489, 8 S.W.(2d) 646; Smisson v. State, 71 Tex. 222, 9 S. W. 112; Greene v. Robison, 109 Tex. 367, 210 S. W. 498.

We thus have here presented a case where the land in controversy belongs to the state, and is so recognized by all the parties. So this action, if successfully maintained, would not restore to the state any land adversely claimed to be embraced in prior grants made by the state to individuals. In truth the only effect of the judgment sought by appellant would be to impress upon the land the status of unsurveyed land dedicated to the public free school fund, and subject to purchase by him, rather than land surveyed and dedicated to the permanent fund of the University as theretofore recognized and claimed by the authorized agents of the state so to be.

We very much doubt if article 5323, R. S., has any application to such a state of facts. But, for the purpose of this appeal, it will be assumed that the action is authorized by said article, subject, as later held, to the necessity of joining the state as a party.

■ Persons interested in the object and subject-matter of a suit, and whose rights will be directly affected by the judgment rendered, are necessary parties. Waldrep v. Roquemore, 60 Tex. Civ. App. 138, 127 S. W. 248; Stahlman v. Riordan (Tex. Civ. App.) 227 S. W. 726, 729; Nail v. Taylor (Tex. Civ. App.) 223 S. W. 719; Minear v. McVea (Tex. Civ. App.) 185 S. W. 1048; Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979, and cases there cited.

Land dedicated and set apart to the permanent fund of the University of Texas is under the management and control of the Board of Regents of the University, and that board has the right to sell, lease, and use the same as it deems for the best interests of the University. Article 2596, R. S.

On the other hand, land dedicated to the public free school fund is under the jurisdiction of the commissioner of the general land office, and subject to sale by him in the manner prescribed by law. In the case of land adjudged, under article 5323, R. S., to be unsurveyed land belonging to the public free school fund, the applicant has a preference right to purchase. There are other well-known statutory provisions relating to the sale and leasing of free school land and development of its mineral resources which differentiate such land from University land and radically affect the state's management, control, and sale of the same.

■ Article 5323, R. S., in its second subdivision, provides that "the surveyor shall implead the claimant of the land." The manifest purpose was that all adverse claimants of the land should be made parties to the litigation, so that the issue could be finally and judicially determined and all adverse claimants thereafter concluded by the judgment rendered. In Smith v. Turner, 13 S.W. (2d) 152, this court held that, as to the parties to the litigation, the judgment would be res judicata as to the status of the land.

In the case at bar, the state is the claimant; in fact, the owner of the land, and it cannot be omitted from the suit unless the plain language and obvious purpose of the statute be disregarded.

We are therefore of the opinion the statute itself makes it imperative that the state be made a party to the litigation.

In addition to that, its joinder is required under the general rules of law governing parties. If the state would not be regarded as bound by a judgment in favor of appellant in this suit to which the state is not a party, such judgment would nevertheless becloud the state's title, create conflict between its agents, hamper and impede the agent rightfully entitled to the management, control, and sale of the land. In our opinion, the judgment would necessarily and directly affect the state in its ownership of the land, and we regard it as a necessary party to the litigation in the strict sense under the general rules of law governing parties.

■ We concur in the assertion by appellant that the members of the Board of Regents are proper parties defendant, and it may be they are suable without the consent of the state, under the rule recognized in U. S. v. Lee, 106 U. S. 197, 1 S. Ct. 240, 27 L. Ed. 171; Imperial Sugar Co. v. Cabell (Tex. Civ. App.) 179 S. W. 83; Whatley v. Patten, 10 Tex. Civ. App. 77, 31 S. W. 60; and Stanley v. Schwalby, 85 Tex. 348, 19 S. W. 264. But this does not control the question here at issue, for the Regents do not own the land and have no authority to represent the state in this litigation.

■ We do not concur in the view that article 5323, R. S., grants the consent of the state to be sued upon the facts here shown and that the state is to be regarded as in privity with the litigation. Where the land asserted to be unsurveyed is adversely claimed by third persons to be embraced in prior grants, a recovery by a plaintiff in an action brought under article 5323, R. S., inures to the benefit of the state, and in such cases it may perhaps be considered that the state is in privity with the litigation. As to that we express no opinion. But, as pointed out above, upon the present facts a recovery by appellant would not inure to the benefit of the state, for the state already owns the land, and a recovery by appellant would adversely affect rather than benefit its ownership.

We have considered all propositions submitted by appellant, and think they show no error in the judgment of dismissal.

Affirmed.