**GULF PRODUCTION CO. et al. v. COLQUITT et al.**

No. 2229.

Court of Civil Appeals of Texas. El Paso.
Feb. 20, 1930.

Rehearing Denied March 13, 1930.

H. L. Stone, of Pittsburgh, Pa., John E. Green, Jr., of Houston, Hill, Smith & Neill and Wright & Gibbs, all of San Angelo, W. C. Jackson, of Ft. Stockton, and David Proctor, of Houston, for appellants.

Belcher & Montague, of Del Rio, Dayton Moses, of Ft. Worth, James Cornell and Upton & Upton, all of San Angelo, L. W. Elliott, of Sonora, J. F. Sutton, of San Angelo, Howell Johnson, of Ft. Stockton, and Brian Montague, of Del Rio, for appellees.

HIGGINS, J.

By instrument bearing date December 20, 1924, Mrs. M. A. Smith, in her individual capacity, and joined by her husband, W. A. Smith, and also in her capacity as guardian of the Matthews minors, Mrs. Ida Mae Ramsey, joined by her husband, and Mrs. Viola Seeley, joined by her husband, executed to E. C. Marrs an oil and gas lease covering surveys 22, 28, 36, and the west 116½ acres of section 20, all in block 194, Gulf, Colorado & Santa Fé Railway Company survey in Pecos county. In executing this lease the lessors acted for themselves and "as agents for the State of Texas." The instrument upon its face so states. By instrument bearing the same date Mrs. Smith and husband executed an oil and gas lease to said Marrs, covering the east 523½ acres of said survey 20.

The present suit was brought by appellee Colquitt against E. C. Marrs, the Gulf Production Company, assignee of Marrs, W. A. Smith, the husband of Mrs. M. A. Smith, and others not necessary to mention. W. A. Smith was joined as a party defendant because of his alleged refusal to join as plaintiff. Colquitt sued in the dual capacity of receiver of the estate of Mrs. M. A. Smith and as her next friend. The suit was in trespass to try title and to cancel the oil and gas leases mentioned in so far as they affected sections 20, 22, and 28, to recover the mineral interests of Mrs. Smith in said sections, and also for accounting and recovery of the value of the oil and gas produced from the land; the basis of the action being the alleged lack of legal capacity on the part of Mrs. Smith to execute the leases because of mental infirmity which rendered her incapable of understanding the nature, character, and effect of such instruments.

Upon findings of the jury judgment was rendered in favor of the plaintiff. Without going into the intricate details of the judgment, it is sufficient to say plaintiff recovered judgment canceling the leases because of the mental incapacity of Mrs. Smith and recovery of certain undivided interests in the lands and also judgment against the Gulf Production Company for $61,160.92, the value of oil produced from the land. The Gulf Production Company and Marrs appeal.

■ Sections 22 and 28 belonged to the public free school fund. On September 2, 1915, they were sold by the state to Mrs. M. A. Monroe, who later married W. A. Smith, and in whose behalf Colquitt sued in the capacities stated above. The land was sold to her under a mineral and dry grazing classification. The Matthews minors jointly, Mrs. Ramsey and Mrs. Seeley, on March 4, 1922, each acquired an undivided one-eighth interest in sections 22 and 28, and owned same on December 20, 1924. These sections having been sold under a mineral and dry grazing classification, it follows that Mrs. Smith had no title to the minerals in those lands; the state of Texas owned the minerals therein. Greene v. Robison, 117 Tex. 516, 8 S.W.(2d) 655. Mrs. Smith owned the surface estate, but such estate was burdened with an easement of necessity in favor of the state to enter upon and use the surface in so far as it was reasonably necessary for the purpose of developing the reserved mineral estate and removing such minerals. This dominant easement would pass to those to whom the state might grant the mineral estate as appurtenant to the grant. These conclusions rest upon settled principles of the law of easements.

■ When Mrs. Smith, acting individually and as guardian of the Matthews minors, joined by her husband and the other owners of sections 22 and 28, leased to Marrs the minerals in such sections they acted as agents for the state of Texas. They granted to Marrs nothing which they owned. They conveyed the mineral estate and the appurtenant surface easement which the state owned. Since Mrs. Smith granted nothing which she owned, she has no such title to sections 22 and 28 as would enable Colquitt in her behalf to sue for and recover the estate which passed to Marrs by the lease and to cancel such lease. The lease was not void by reason of her mental incapacity, but voidable only. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115; Missouri Pac. R. Co. v. Brazzil, 72 Tex. 233, 10 S. W. 403. If she was mentally incapacitated at the time she executed the lease, the right to avoid the same vested in her principal, the state of Texas, and not in her. The state has not granted to surface owners any right to sue in its behalf, and, if it had done so, Mrs. Smith, by reason of her

mental incapacity, is scarcely a proper person to determine for the state whether it will elect to cancel the lease or accept its benefits. .

Appellants' propositions are sustained which assert Mrs. Smith has no such title as will support the action as to those sections. If we are in error in so holding, then for reasons later stated in discussing the question of parties, it must be held the state was an indispensable party as to those sections.

We do not desire to be understood as holding that a surface owner could not maintain an action against a naked trespasser or one claiming under a void or forged grant of the minerals. In such a case her surface estate is being unlawfully trespassed upon and for the protection of such estate the owner may sue.

Upon the ruling made respecting sections 22 and 28, it becomes unnecessary to consider other propositions which affect only the suit as to those tracts.

Section 20 was public free school land, purchased from the state on October 6, 1905, by John Monroe, the former husband of Mrs. Smith, under a dry grazing classification. Monroe died in 1913 and the section passed by his will to his surviving wife, now Mrs. Smith.

On March 4, 1922, undivided one-eighth interests in sections 22, 28, and the west 116½ acres of section 20, passed to Mrs. Ramsey and Mrs. Seeley and a like interest passed to the Matthews minors jointly. Section 20 having been sold by the state under a dry grazing classification, title to the minerals therein passed from the state. Though the minerals were owned by the parties named and Mrs. Smith, the west 116½ acres of 20 were embraced in the lease covering sections 22 and 28, wherein the lessors undertook to make the lease as agents of the state. The lease makes no distinction, in its rental and royalty provisions, between said 116½ acres and the other sections. The obligation upon the lessee imposed by the lease is to pay the state royalties and rentals upon the 116½ acres.

Subsequent to December 20, 1924, Mrs. Smith and husband executed deeds to various persons conveying undivided interests in the minerals in and under sections 20, 22, and 28, the deeds reciting that they were subject to the then existing oil and gas leases upon the lands. The effect of the deeds was to pass undivided interests in the oil and gas royalties provided in the leases. Mrs. Ramsey and husband did likewise. Mrs. Ramsey and Mrs. Smith, however, did not part with all of their royalty interest.

Appellant filed a.plea in abatement which, among other things, set up that the state of Texas, the Ramseys, Seeleys, Matthews minors, and the parties to whom conveyances had been executed by the Smiths and Ram-

seys and those claiming under such conveyances, naming them, were necessary parties to the suit, which plea was overruled.

■ The individuals mentioned are certainly interested in the subject-matter of. this suit. Their rights are inseparably and indivisibly connected with Mrs. Smith's rights. We do not see how a judgment in favor of Mrs. Smith for recovery of the minerals in the lands and cancellation of the leases as to her can possibly be enforced without adversely affecting the rights held by those individuals. The royalty is contingent upon production of oil and gas, and there can be no production thereof, except as a trespasser against Mrs. Smith, if the judgment herein stands.

We regard these individuals as necessary parties in the strict sense. The suit should be abated unless they are joined. Runck v. Gates (Tex. Civ. App.) 14 S.W.(2d) 885; McKay v. Phillips (Tex. Civ. App.) 220 S. W. 176; Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063, 1070; Priddy v. Business Men's Oil Co. (Tex. Com. App.) 250 S. W. 156; Perkins v. Terrell (Tex. Civ. App.) 214 S. W. 551; McNeill v. Cage, 38 Tex. Civ. App. 45, 85 S. W. 57; Dial v. Martin (Tex. Civ. App.) 8 S.W.(2d) 241; Buffalo Bayou Ship Co. v. Bruly, 45 Tex. 6; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Coiron v. Millaudon, 19 How. (60 U. S.) 113, 15 L. Ed. 575; California v. Southern Pacific R. Co., 157 U. S. 229, 15 S. Ct. 591, 39 L. Ed. 683; Ribon v. Chicago, etc., Ry. Co., 16 Wall. 446, 21 L. Ed. 368; Williams v. Bankhead, 19 Wall. (86 U. S.) 563, 22 L. Ed. 184; Kendig v. Dean, 97 U. S. 423, 24 L. Ed. 1061; Swan, etc., Cattle Co. v. Frank, 148 U. S. 611, 13 S. Ct. 691, 37 L. Ed. 580.

■ As to the necessity for joining the state, in so far as the suit concerns the west 116½ acres of section 20, we are much perplexed because of the admitted facts which show that the state had no interest in the minerals when the lease was executed embracing that land along with those sections in which the state did own the minerals. Why it was done the record does not disclose. The fact remains that the lease obligated the lessee Marrs and his assignees to pay the state an annual rental upon the 116½ acres and the value of one-sixteenths of the oil and gas produced therefrom. The obligation to pay the annual rental perhaps may not render the state a necessary party to this suit, for the right of the state, if any, to enforce that obligation against the lessee would not be affected by the judgment herein because of the state's nonjoinder. But as to the obligation to pay one-sixteenths of the oil and gas produced from the land the situation is different. The obligation to pay this royalty is contingent upon production of oil and gas. The judgment herein, as above shown, precludes that possibility, and thus necessarily and adversely affects the contractual rights

of the state with respect to the royalty. In this situation the state is an indispensable party to the suit. Columbia Water Power Co. v. Columbia Electric, etc., Co., 43 S. C. 154, 20 S. E. 1002–1006; Christian v. Atlantic, etc., Ry. Co., 133 U. S. 241, 10 S. Ct. 260, 33 L. Ed. 592; Cunningham v. Macon & Brunswick Ry. Co., 109 U. S. 446, 3 S. Ct. 292, 609, 27 L. Ed. 992; Murray v. Wilson Distilling Co., 213 U. S. 169, 29 S. Ct. 458, 53 L. Ed. 751; Morrison v. Work, 266 U. S. 481, 45 S. Ct. 149, 69 L. Ed. 394; Ferris v. Wilbur (C. C. A.) 27 F.(2d) 262; Leather v. White (C. C. A.) 296 F. 477, affirmed 266 U. S. 592, 45 S. Ct. 194, 69 L. Ed. 457; Utah v. Work, 55 App D. C. 372, 6 F.(2d) 675, affirmed 273 U. S. 649, 47 S. Ct. 246, 71 L. Ed. 822; Runck v. Gates (Tex. Civ. App.) 14 S.W.(2d) 885.

■ It is known to this court that since this appeal was perfected Mrs. Smith has died. This fact did not abate the cause, and it is the duty of this court to "proceed to adjudicate the case and render judgment therein as if all parties thereto were still living. Such judgment shall have the same force and effect as if rendered in the lifetime of all parties thereto." Article 1850, R. S.

The conclusions stated above necessitate reversal, as the judgment affects sections 22 and 28 and rendition here in favor of appellants; and reversal and remand as the cause affects section 20 and other issues.

Appellants plea in abatement also challenged the authority of Colquitt to sue as next friend of Mrs. Smith, it being asserted she was mentally competent to act for herself. This issue was submitted to the jury with the trial upon the merits and found against appellants.

The plea also asserted that, if she was incompetent, it was nevertheless necessary to join her in her own proper person.

The plea also challenged the authority of Colquitt to sue as receiver of her estate, it being asserted his appointment as receiver was void, and, if the appointment was valid, it was nevertheless incompetent for him to prosecute this suit, and the court in which the receivership was pending could not authorize the prosecution of suits of the present character.

■ While Mrs. Smith's death did not abate the cause in this court, yet, the reversal of the judgment remitted her to the cause of action set up in the pleadings of the appellee Colquitt. Ellis v. Brooks, 101 Tex. 591, 102 S. W. 94, 103 S. W. 1196; Hughes v. Hughes (Tex. Civ. App.) 170 S. W. 847; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680.

■ This cause of action, by her death, is now vested in her heirs, devisees, or legal representatives. The suit in the future must proceed in their name, and, if they fail to make themselves parties plaintiff, the defendants may force the discontinuance of the suit. Arts. 2078, 2079, R. S.

■ It is obvious that Colquitt cannot further prosecute the suit as the next friend of one who is now dead, and to us it seems equally obvious that upon Mrs. Smith's death jurisdiction over the administration of her estate vested in the county court to the exclusion of the right of the district court which had theretofore appointed Colquitt receiver of her estate during her lifetime. The county court has exclusive jurisdiction in the administration of the estates of deceased persons. Section 16 of article 5, Constitution. State v. Gillette's Estate (Tex. Com. App.) 10 S.W.(2d) 984.

The further prosecution of this suit, since Mrs. Smith's death, by the receiver Colquitt, acting under the authority of the district court would be to the exclusion of the probate jurisdiction of the county court and wholly unauthorized.

It is therefore unnecessary to consider the propositions relating to the last-mentioned features of the plea in abatement, as they will not arise upon retrial.

Our view of the other questions presented will be stated briefly.

Marrs assigned to the Humble Oil & Refining Company his lease upon section 36. Mrs. Smith, suing by a next friend, and the receiver Colquitt sued the Humble Company and W. A. Smith to cancel the lease on said section and recover the minerals. The Humble Company filed a cross-action, and an agreed judgment was rendered in its favor.

The ruling of the trial court with respect to the effect of that suit and judgment was correct. It involves no question of splitting a cause of action or of ratification of the lease as to sections 22, 28, and the west 116½ acres of 20.

■ The lease as to 36 then owned by the Humble Company could be ratified without affecting her right to cancellation as to other lands covered by the lease and then held by others.

■ The rule against splitting a cause of action has for its object the prevention of repeated litigation between the same parties in regard to the same subject of controversy. 1 C. J. 1107.

The filing of separate suits against different assignees of Marrs of different tracts does not in anywise offend against the rule.

Necessity for consideration of the twelfth proposition is eliminated by the ruling respecting sections 22 and 28.

The thirteenth proposition involves simply a mathematical calculation. If an erroneous calculation was made upon the trial, there is no occasion for it to reoccur.

The twenty-second and twenty-fifth propositions relating to ratification present no error. The evidence presents no issue of ratification.

 There was no error in admitting testimony of witnesses of statements made to them by Mrs. Smith charging her sons with dishonesty and her daughters with gross immorality. The impulse of the normal-minded mother is to shield and protect her children from defamation. If her sons are dishonest and her daughters immoral, she will not publish it. We regard the testimony as competent upon the issue of Mrs. Smith's mental condition, and the court did not err in charging the jury that such statements were not to be regarded as proof of the truth thereof.

The court erred in excluding certified copies in the guardianship proceedings No. 135, in the county court of Pecos county, the habeas corpus proceedings No. 3025 in the district court of Tom Green county, and the suit No. 1423 between Mrs. Smith and her children in the district court of Pecos county, in all of which proceedings her sanity was in issue, and in each case the judgment established her sanity. Corpus Juris, vol. 34, p. 1175, § 1668; Corpus Juris, vol. 32, p. 647, §§ 226 and 227; Witty v. State, 69 Tex. Cr. R. 125, 153 S. W. 1146; Etchen v. Texas Co., 82 Okl. 62, 199 P. 212; Mitchell v. Stanton (Tex. Civ. App.) 139 S. W. 1033; Williams v. Sapieha (Tex. Civ. App.) 62 S. W. 72; Herndon v. Vick, 18 Tex. Civ. App. 583, 45 S. W. 852; Grimes v. Shaw, 2 Tex. Civ. App. 20, 21 S. W. 718; Mitchell v. Inman (Tex. Civ. App.) 156 S. W. 290; Hunt v. State, 33 Tex. Cr. R. 252, 26 S. W. 206; Elston v. Jasper, 45 Tex. 409; Gerlich v. Myers (Tex. Civ. App.) 290 S. W. 270; Michon v. Ayalla, 84 Tex. 685, 19 S. W. 878; McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260. Under the authorities cited the evidence was admissible upon the issue of mental capacity.

The proceedings in causes No. 135 and No. 1423 were also admissible as explaining the hostility of Mrs. Smith toward her children and accounting for the mental attitude which prompted the derogatory statements made by her concerning her children referred to above.

 There was no error in the court charging that the appointment of Mrs. Smith as guardian of the Matthews children and that she executed the lease as such guardian were not to be considered as tending to prove or disprove the issue of her mental capacity. It is of course true that an insane person is not qualified to act as a guardian, and, if such fact were called to the court's attention, such a person would not be appointed. But Mrs. Smith's mental capacity was not in issue in such proceedings, and therefore her appointment as guardian involved no finding with respect to her then mental capacity.

Appellants offered in evidence certified copies of 72 different oil and gas leases, conveyances, releases, grazing leases, and contracts executed by Mrs. Smith at different times, and upon objection same were excluded. These documents had no probative value upon the issue of her mental capacity unless accompanied by testimony showing or tending to show that she understood what she was doing when she executed same. The instruments of themselves had no probative value upon the issue of Mrs. Smith's mental condition.

Complaint is made of the exclusion of the depositions of Judge C. E. Davidson and Hon. R. Wilbur Brown. These witnesses had represented Mrs. Smith as attorneys, and they testified to various transactions and conversations with her in that capacity. Based upon their observation obtained in such manner, they expressed the opinion that she was mentally capable at the time they observed her.

We think the transactions and conversations testified to by the witnesses were privileged matters and their opinion as to her mental capacity based thereon incompetent. 40 Cyc. 2375; 28 R. C. L. 568; Sheehan v. Allen, 67 Kan. 712, 74 P. 245; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

Reversed and rendered as to sections 22 and 28; reversed and remanded as to section 20, and all other issues.